607 So.2d 963 (1992)
Peter REVOLTA, et al.
v.
REGIONAL TRANSIT AUTHORITY, et al.
No. 92-C-1338.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1992.
Walter I. Willard, Berrigan, Danielson, Litchfield, Olsen, Schonekas & Mann, New Orleans, for relators.
Joseph Race, Murray Law Firm, New Orleans, McNeil J. Kemmerly, Law Offices of Paul A. Eckert, Metairie, for respondents.
Before BYRNES, LOBRANO, PLOTKIN, WALTZER and LANDRIEU, JJ.
*964 WALTZER, Judge.
This action was initiated after an accident involving two minors and a Regional Transit Authority (RTA) bus. Plaintiff, Peter Revolta, the father and administrator of the estate of his minor daughter Sherri, the passenger of the automobile, brought suit against James Howard, the father and administrator of the estate of his minor daughter Jennifer, the driver of the automobile, their insurer, Yolanda Reddi, the driver of the bus, and RTA. The accident occurred in Orleans Parish. The suit was filed in St. Bernard parish, the domicile of Peter and Sherri Revolta and James and Jennifer Howard. RTA filed an exception of improper venue in the trial court, which was denied. RTA thereupon applied for writs to this Court, asking that the trial court's denial of their exception of improper venue be reversed.
This writ poses an interesting and unique question of statutory interpretation of LSA-R.S. 13:5104(B) and LSA-R.S. 48:1654(A). LSA-R.S. 13:5104(B), a section in Part XV entitled Suits Against State, State Agencies, or Political Subdivisions, is the statute defining the proper venue for suits against political subdivisions. LSA-R.S. 13:5104(B) states:
All suits filed against a political subdivision of the state shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause arises. (West 1985).
RTA argues that their exception of improper venue should have been granted by the trial court due to the fact that LSA-R.S. 13:5104(B) venue is mandatory and that Orleans Parish is the only proper venue in this case.
We agree that venue under LSA-R.S. 13:5104(B) is mandatory. The Louisiana legislature amended this statute in 1985 changing only the word "may" to the statute's current reading "shall", thereby indicating that a suit filed against a political subdivision must be brought in the parish where it is "located" or where the "cause arises". Texaco Inc. v. Plaquemines Parish Government, 527 So.2d 1128, 1130 (see also J. Lanier's concurrence p. 1130, 1131) (La.App. 1st Cir.1988); reh. den. (August 24, 1988). The accident, the cause giving rise to this action, occurred in Orleans Parish. We are therefore left with the sole question of whether RTA is "located" in St. Bernard Parish.
The statute establishing the Regional Transit Authority, LSA-R.S. 48:1654, states in pertinent part;
A. There is hereby created the Regional Transit Authority, subject to the conditions hereinafter set forth, which shall be a body politic and corporate and a political subdivision of the state of Louisiana comprising all of the territory in the parishes of Jefferson, Orleans, St. Bernard, and St. Tammany, or of such of the aforesaid or other parishes as elect to participate in the authority. The domicile of the authority shall be the parish of Orleans, but may be situated in one of the other participating parishes but only by the affirmative vote of a majority of the total weighted vote of the authority.
This statute clearly defines RTA's domicile as Orleans Parish, but not its location. Respondent argues that location and domicile are not the same. While we initially agree with this argument, we believe that in this situation location and domicile are the same. When interpreting statutes, it is presumed that every word, sentence, or provisions in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Sanchez v. Sanchez, 582 So.2d 978, 980 (La.App. 1st Cir.1991). The Louisiana legislature well knows the difference between "domicile" and "located". Other statutes concerning suits against political bodies have specified domicile as the proper venue. See LSA-R.S. 13:5123 and 13:5125.
However, this Court has a duty to interpret laws as legislated and to honor that meaning as revealed by its language, purpose, and history. Sanchez, supra at 971. We believe that the history and purpose of LSA-R.S. 13:5104(B) indicate that the legislature intended only one parish for venue *965 when they used the word "located".[1] We further note the legislature's use of the word "the" to introduce "parish" in LSA-R.S. 13:5104(B). The Code of Civil Procedure article providing the general rules of venue uses "a" to indicate that more than one parish may be proper for venue, but uses "the" to indicate that only one parish is proper for venue. See La.C.C.P. art. 42.
We further find the recent analysis of the Louisiana Second Circuit enlightening in interpreting LSA-R.S. 13:5104(B). Commercial National Bank in Shreveport v. First National Bank of Fairfield, Texas and Transworld Life Insurance Co., 603 So.2d 270 (La.App. 2d Cir.1992). In that case, the court interpreted the second part of the venue provision which provides that the parish in which the "cause arises" is also a proper venue. LSA-R.S. 13:5104(B). The Second Circuit reasoned that the same considerations given to ordinary contract cases to determine venue, provided for in La.C.C.P. 76.1, should be given in determining venue under LSA-R.S. 13:5401(B). supra at p. 273. The present case is one in tort. Venue in tort suits is proper in either the parish of the defendant's domicile or in the parish where the cause of action arose. Smith v. Orleans Electronic, Inc., 457 So.2d 216, 218 (La. App. 4th Cir.); writ den., 460 So.2d 1045 (La.1984); see also La.C.C.P. articles 42 and 74. The general rules of venue in ordinary tort suits can be followed in interpreting the venue statute for tort suits against political subdivisions. Furthermore, statutes allowing exceptions to the general rule of venue that an action must be brought against a defendant in the parish of his domicile should be strictly construed and applied only in cases falling clearly within their provisions. Schueler v. Schueler, 460 So.2d 1120, 1125 (La.App. 2 Cir.); writ den., 464 So.2d 318 (La.1985); Dupre v. Pelotto, 336 So.2d 329, 331 (La. App. 1st Cir.1976). A political subdivision, as a defendant, should not be sued outside its domicile unless clearly indicated by the legislature. We do not believe the legislature's use of the word "located", after they had expressly specified the domicile of the RTA (see R.S. 48:1654), is a clear enough indication that a proper venue exists outside the RTA's domicile for this cause of action.
For the foregoing reasons, the trial court's denial of RTA's exception of improper venue is reversed and set aside, and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
BYRNES, J., concurs with written reasons.
LOBRANO, J., dissents.
BYRNES, Judge, concurring with reasons.
I agree with the incisive analysis of Judge Waltzer in its entirety: "domicile" as used in LSA-R.S. 48:1654(A) establishing the Regional Transit Authority, was intended to serve the same purpose as "location" as that term is used in LSA-R.S. 13:5104(B) which is the general venue statute concerning "Suits Against State, State Agencies, or Political Subdivisions." *966 Therefore, it behooves this court to explain this apparent inconsistency in terminology.
In Louisiana the concept of domicile is found in Book I of the Civil Code entitled "Of Persons", and more specifically in Title II entitled "Of Domicile and the Manner of Changing the Same." Intrinsic to the concept of domicile in Louisiana is that it applies to natural persons; and that natural persons are inherently mobile and able to change location. (See also: 28 C.J.S. Domicile which also discusses domicile in terms of natural persons and mobility.)
LSA-R.S. 13:5104(B) has a totally different non-codal genesis which explains why it uses different terminology ("location" vs. domicile") but for equivalent purposes. The Civil Code provisions concerning persons and domicile go back well over 100 years. LSA-R.S. 13:5104(B) is of much more recent origin, having evolved in response to the erosion of the concept of sovereign immunity. Until 1960 plaintiffs in this case would have had no remedy against the State or a political subdivision such as the Regional Transit Authority. Duree v. Maryland Casualty Co., 238 La. 166, 114 So.2d 594 (La.1959); Plaisance v. Department of Highways, 132 So.2d 925 (La.App. 1 Cir.1961). See also the excerpt from the minutes of the Senate Committee on Judiciary, Section C for June 18, 1983 found in footnote 1 of the main opinion. LSA-R.S. 13:5104(B) grew out of this post 1960 change in attitude regarding sovereign immunity, not the general codal provisions concerning persons, domicile, and venue.
As impermanence, the ability to change, and "natural persons" are intrinsic to the concept of "domicile", it is understandable that the legislature preferred to use the generally more appropriate term "location" to serve the same purpose as "domicile" in connection with political entities which historically were, for all practical purposes, theoretically permanent, immobile, and not amenable to suit as distinguished from natural persons.
Concurrent with the erosion of sovereign immunity has been the creation of political entities such as the Regional Transit Authority that partake of a hybrid quality and assume many of the qualities of private corporations which in turn have much in common with natural persons in connection with which the term "domicile" would not be so incompatible. LSA-R.S. 48:1654(A) states that "... the Regional Transit Authority... shall be a body politic and corporate and a political subdivision of the state of Louisiana ..." [Emphasis added.] LSA-R.S. 48:1656 confers upon it "[t]he powers, privileges, and immunities authorized by law for private corporations and for instrumentalities of government." [Emphasis added.] Moreover, in creating the RTA the legislature specifically provided for the possibility of mobility in LSA-R.S. 48:1654(A): "... The domicile of the authority shall be the parish of Orleans, but may be situated in one of the other participating parishes but only by the affirmative vote of a majority of the total weighted vote of the authority." [Emphasis added.]
Additionally, the fact that the Regional Transit Authority partakes of the qualities of a private corporation is a further indication that the legislature intended that venue be located in Orleans Parish, which is where venue would be located if this were a private corporation. It is important to note that the general venue provisions found in LSA-C.C.P. Art. 42 uses the term "domicile" in subparagraph (1) when discussing venue appropriate to individuals; but uses the term "located" in subparagraphs (2), (3), and (4) when discussing venue appropriate to domestic and foreign corporations. This is a clear indication that the legislature intentionally uses both terms in the context of venue.
As was aptly pointed out by Judge Waltzer "when interpreting statutes, it is presumed that every word, sentence, or provisions in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used." Sanchez v. Sanchez, 582 So.2d 978, 980 (La.App. 1 Cir.1991).
Applying this principle to LSA-R.S. 48:1654(A) we are compelled to give effect to "domicile", especially in view of the fact that it is used so prominently and deliberately. *967 If this court were to say that the term "domicile" was not intended to refer to venue, it would eviscerate that provision in the statute and render it virtually nugatory, which was clearly not the intention of the legislature. Outside of venue, there is no other meaningful purpose sufficient to explain why the legislature specified so explicitly the domicile of the Regional Transit Authority.
Finally, it is the established rule of statutory construction that when trying to resolve real or apparent differences between two statutes, the specific [LSA-R.S. 48:1654(A) referring to "domicile"] takes precedence over the general [LSA-R.S. 13:5104(B) referring to "location"].
LOBRANO, Judge, dissenting.
La.R.S. 13:5104(B) provides that a suit against a political subdivision of the state shall be instituted in the district court where the political subdivision is located. By statute, the Regional Transit Authority is a political subdivision "comprising all of the territory in the Parishes of Jefferson, Orleans, St. Bernard and St. Tammany...." La.R.S. 48:1654(A). It is undisputed that the RTA operates in St. Bernard Parish, and in my opinion is "located" there. I do not equate "locate" with "domicile" as does the majority. I see no reason why a St. Bernard resident should not be allowed to sue a body politic that is located in St. Bernard Parish.
I would deny the relief sought by relator.
NOTES
[1] The minutes of the Senate Committee On Judiciary, Section C for June 18, 1983 reveal comments made on behalf of the proposer of the 1985 amendment.

Mr. Roy M. Bowes, speaking on behalf of Mr. D'Gerolamo and Jefferson Parish, stated that this bill has statewide applicability, and deals with venue. Mr. Bowes explained that present law provides that all suits filed against a political subdivision of the State may be instituted in the parish or the jurisdiction of that political subdivision. The proposed legislation would provide that the suits shall be in the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause arises. Present law gives the election to the petitioner as to the parish in which the suit will be filed. Prior to 1960 a party could only file a suit against the state or political subdivision if the legislature enacted legislation authorizing that particular lawsuit. In 1960 the legislature waived governmental tort immunity and liability. Mr. Bowes states it was his understanding, and has been with many of the district courts, that it was actually legislative intent to provide venue only in the parish of that particular subdivision, and this is an effort to clarify that understanding. (emphasis added)